UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ROSANNE KARR,**

       **Plaintiff,**

v.                                                      Case No: 6:21-cv-878-CEM-EJK

**NADIC ENGINEERING SERVICES INC. and GODWIN N. NNADI,**

       **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Second Renewed Joint Motion for Approval of Parties' Second Amended Settlement Agreement (the "Motion"), filed June 24, 2022. (Doc. 28.) Upon consideration, I respectfully recommend that the Motion be granted in part.

**I.    BACKGROUND**

Plaintiff instituted this action against Defendants in Florida state court, alleging that Defendants failed to pay Plaintiff overtime compensation in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219. (Doc. 1-3.) In her Complaint, Plaintiff states she worked for Defendant for approximately two years, during which time she "typically worked 40–45 hours per week," and "was eligible to be paid overtime pay at time and one half her regular hourly rate," but that Defendants only paid Plaintiff her regular hourly rate for all hours worked, including overtime

hours. (*Id.* ¶¶ 19–25.) Defendants subsequently removed the action to this Court (*see* Doc. 1) and thereafter filed an answer and affirmative defenses. (Doc. 7.) Following several joint motions for settlement approval, which the undersigned denied without prejudice due to various deficiencies, the parties filed the instant Motion, seeking approval of the settlement agreement (the "Agreement" or the "Settlement Agreement"), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982).

## II. STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise

would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order

> to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers whether the settlement is fair and reasonable to the employee, the "internal" factors, and whether the settlement frustrates the purpose of the FLSA, the "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

## III. DISCUSSION

### A. The Settlement Amount

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid overtime compensation plus an additional, equal amount, as liquidated damages. 29 U.S.C. § 216(b) ("Any employer who violates the provisions

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

of [the FLSA] shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages.").

According to the Settlement Agreement, Defendants have agreed to pay Plaintiff a total of $7,000.00: $3,500.00 for "any and all alleged minimum wages and/or overtime wages" and $3,500.00 in liquidated damages. (Doc. 28-1 ¶ 5.) Plaintiff initially sought damages in excess of $30,000.00. (Doc. 1-3.) Because Plaintiff will receive less than the maximum amount to which she claimed she was entitled to under the FLSA, she has compromised his claim within the meaning of *Lynn's Food*, 679 F.2d at 1354–55.

On review, I find the $7,000.00 total Plaintiff has agreed to accept in satisfaction of her claim to be fair and reasonable in comparison to the original claim, considering that all parties are represented by counsel and wish to avoid the risk and expense of further litigation. (*See* Doc. 28 at 3–4.) I also find this amount fair in relation to the nature of the dispute between the parties contesting Plaintiff's entitlement to overtime payments. Thus, I recommend finding that the settlement sum represents a fair resolution of a *bona fide* dispute between the parties and that Plaintiff has not unfairly compromised her claim.

### B. Attorney's Fees

Plaintiff's attorney will receive $5,000.00 for fees and costs. (Doc. 28-1 ¶ 5.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The

parties represent that this amount was negotiated separately from the amount received by Plaintiff, and the settlement is otherwise reasonable on its face; therefore, further review is not required. (Docs. 28 at 3; 28-1 ¶ 5); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (stating that if the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

### C. Release

In return for payment, Plaintiff has agreed to the following release:

> 6. The Plaintiff, in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Defendants, receipt of which is hereby acknowledged, hereby *completely releases and forever discharges* the Defendants from any and all claims asserted, or which could have been asserted, in the Civil Action, including, but not limited to, any and all claims under the FLSA.
>
> 7. The Plaintiff understands and acknowledges that there may be facts or information which the Plaintiff does not know or suspect to exist in the Plaintiffs favor at the time the Plaintiff executes this Agreement, and the Plaintiff agrees that this Agreement is intended to and does extinguish any and all claims the Plaintiff might have based on such facts or information.
>
> 8. Other than the Civil Action, the Plaintiff represents and warrants that the Plaintiff has never commenced or filed, and the Plaintiff covenants and agrees never to commence, file, aid, or in any way prosecute or cause to be commenced or prosecuted against the Defendant Releasees, or any of them, any action, charge, complaint, or other proceeding, whether administrative, judicial, legislative, or otherwise, including, but not limited to, any action or proceeding for

>> attorneys' fees, experts' fees, disbursements, or costs, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees, or any of them, which may have occurred or failed to occur before the Plaintiffs execution of this Agreement.

(the "Release") (Doc. 28-1 ¶¶ 6–8.)

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352. Furthermore, releases given to numerous unnamed individuals, collectively referred to as "Releasees," are insufficient where the parties are not identified. *Correa v. House of Glass, Inc.*, No. 6:17-cv-676-Orl-28TBS, 2017 WL 8794847, at *4 (M.D. Fla. Oct. 19, 2017) (recommending rejection of the settlement agreement in part because the release extended to numerous unnamed individuals), *denied as moot by*, 2018 WL 1801207 (denying the R&R as moot due to the parties' subsequent filing of a renewed motion for settlement approval); *Schultz v. Tartini at Rock Springs Ridge, LLC*, No. 6:17-cv-815-Orl-37KRS, 2017 WL 11062615, at *2 (M.D. Fla. Sept. 22, 2017) (ordering the parties to file a renewed motion for settlement agreement approval in part because the motion did not address the breadth of the release given to defendants).

Here, the Release appears to extend beyond Plaintiff's FLSA claims, as it refers to "any and all claims asserted . . . including, but not limited to, any and all claims under the FLSA." (Doc. 28-1 ¶ 6.) Additionally, the Release states Plaintiff "covenants and agrees never to commence, file, aid, or in any way prosecute or cause to be commenced or prosecuted against the Defendant Releasees, or any of them, any action, charge, complaint, or other proceeding, whether administrative, judicial, legislative, or otherwise . . ." (*Id.* ¶ 8.) This Release is unquestionably overbroad, and the parties do not state that Plaintiff has otherwise been provided separate consideration for such a general release.

However, the Settlement Agreement contains a severability provision that provides:

> Should any part, term, or provision of this Agreement be declared or determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the validity of the remaining parts, terms, or provisions will not be affected thereby, and said illegal, invalid or unenforceable part, term, or provision will be severed and deemed not to be a part of this Agreement.

(the "Severability Provision") (Doc. 28-1 ¶ 9).

Courts in this District routinely approve settlement agreements while striking unfair or unenforceable provisions of the agreement when the agreement contains a severability provision. *See*, *e.g.*, *Encarnacion v. Dannix Painting LLC*, No. 6:18-cv-682-Orl-41KRS, 2018 WL 5084749, at *3 (M.D. Fla. Aug. 13, 2018)*, report and recommendation adopted*, 2018 WL 5840509 (M.D. Fla. Nov. 8, 2018) (recommending that the contradictory provisions and the general release provision be stricken where

the settlement agreement contained a severability provision); *Goern v. Everglades Day Safari, Inc.*, No. 2:16-cv-755-FtM-99MRM, 2017 WL 3328242, at *3 (M.D. Fla. July 14, 2017), *report and recommendation adopted*, No. 2:16-cv-755-FtM-99MRM, 2017 WL 3316369 (M.D. Fla. Aug. 2, 2017) (recommending that the plaintiff's "waiver and general release" provision be stricken where the settlement agreement contained a severability provision); *Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1376358, at *4 (M.D. Fla. Mar. 28, 2016), *report and recommendation adopted*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016) (recommending that the non-disparagement and confidentiality provisions be stricken from a settlement agreement that contained a severability provision).

As the Severability Provision permits striking illegal, invalid, or unenforceable terms or provisions, I recommend that the Court strike from the Release the phrase "in the Civil Action, including, but not limited to, any and all claims" from paragraph 6, in addition to the entirety of paragraph 8.

### IV. RECOMMENDATION

Upon consideration of the foregoing, I respectfully recommend that the Court:

1. **GRANT IN PART** the parties' Second Renewed Joint Motion for Approval of Parties' Second Amended Settlement Agreement (Docs. 28, 28-1);

2. **STRIKE** the phrase "in the Civil Action, including, but not limited to, any and all claims" from paragraph 6 of the Settlement Agreement, in addition to the entirety of paragraph 8. (*See* Doc. 28-1 ¶¶ 6, 8.)

3.  **FIND** that the parties' Settlement Agreement (Doc. 28-1), as revised, is a fair and reasonable resolution of a *bona fide* dispute under the FLSA;

4.  **DISMISS** the case **WITH PREJUDICE**; and

5.  **DIRECT** the Clerk of Court to close the file.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.**

Recommended in Orlando, Florida on July 25, 2022.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE